IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Raymond Edward Chestnut, | ) | C/A No.: 1:14-2222-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| J. Comstock, discipline hearing officer, | ) | REPORT AND RECOMMENDATION |
| in her individual capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Raymond Edward Chestnut ("Plaintiff"), proceeding pro se and in forma pauperis,
filed this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics*, 403 U.S. 388, 397 (1971). Plaintiff sues J. Comstock ("Defendant"), a former
disciplinary hearing officer ("DHO") at the Federal Correctional Institution in
Williamsburg, South Carolina ("Williamsburg FCI"), where Plaintiff was previously
incarcerated.[1] This matter comes before the court on Defendant's motion to dismiss, or in
the alternative, motion for summary judgment.[2] [ECF No. 24]. The motion having been
fully briefed [ECF Nos. 24, 45, 46, 48], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule
73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial
proceedings. Having carefully considered the parties' submissions and the record in this

---

[1] Plaintiff is currently incarcerated at United States Penitentiary Lewisburg ("USP
Lewisburg").
[2] Because the motion presents materials outside of the pleadings, the undersigned advised
Plaintiff that the court intends to construe it as a motion for summary judgment. [ECF
No. 34].

case, the undersigned recommends the district judge grant Defendant's motion for summary judgment.

I.     Background

    A.     Procedural History

Defendant filed her motion to dismiss, or in the alternative, motion for summary judgment ("Defendant's Motion") on November 18, 2014. [ECF No. 24]. The undersigned issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on November 19, 2014, advising Plaintiff that he had until December 23, 2014, to file a response and warning him of the consequences of a failure to respond. [ECF No. 25]. Plaintiff filed a motion to amend his complaint on December 10, 2014, but failed to attach a proposed motion, specify the elements of the complaint he desired to amend, or address Defendant's Motion. *See* ECF No. 29. On December 31, 2014, the undersigned issued an order denying Plaintiff's motion to amend the complaint and directing him to advise the court whether he wished to continue with the case and to file a response to Defendant's Motion by January 30, 2015. [ECF No. 31]. Plaintiff filed a motion for an extension of time to respond to Defendant's Motion on January 16, 2015, which the undersigned granted on January 20, 2015, making Plaintiff's response due by March 31, 2015. *See* ECF Nos. 33, 34. Plaintiff failed to respond, and the undersigned issued an order on April 7, 2015, directing Plaintiff to advise the court whether he desired to proceed with the case and to file a substantive response to Defendant's Motion by April 21, 2015. [ECF No. 36]. The undersigned warned Plaintiff that if he failed to respond, the action would be recommended for dismissal with prejudice for failure to prosecute. *Id.*

On April 9, 2015, Plaintiff filed another motion for an extension of time, which the undersigned granted, giving him until May 15, 2015, to respond to Defendant's Motion, but advising him that no further extensions would be granted. *See* ECF Nos. 39, 40. Plaintiff failed to file a response to Defendant's Motion by the extended deadline, and, on May 20, 2015, the undersigned issued a Report and Recommendation recommending the court dismiss the action with prejudice based on Plaintiff's failure to prosecute. [ECF No. 43].

Plaintiff subsequently filed a response in opposition to Defendant's Motion on May 26, 2015, objections to the Report and Recommendation on June 4, 2015, and a sur reply to Defendant's Motion on June 15, 2015. [ECF Nos. 45, 47, 48]. The court adopted the report and recommendation on June 29, 2015, and ordered Plaintiff's complaint be dismissed with prejudice for failure to prosecute. [ECF No. 49]. Plaintiff filed a motion for reconsideration on July 20, 2015, arguing he delivered his response in opposition to Defendant's Motion to a prison guard on May 15, 2015, who neglected to deliver it to the prison mailroom until May 19, 2015. [ECF No. 54 at 2]. On December 3, 2015, the court issued an order granting Plaintiff's motion for reconsideration, vacating its order dismissing the action for failure to prosecute, directing the Clerk of Court to reopen the case, and referring the case back to the undersigned for consideration of Defendant's Motion. [ECF No. 55].

B.    Factual Background

1.    Complaint

Plaintiff alleges Defendant imposed sanctions against him following a disciplinary

3

hearing, without providing him due process. [ECF No. 1 at 2]. Plaintiff states that Defendant failed to provide advance notice of the DHO hearing and "prevented the Plaintiff from calling witnesses, for testimony during the hearing, and documentary evidence to be considered." *Id*. at 3–4. Plaintiff also claims Defendant hid video evidence from the record and did not consider his handwritten statement or a witness's written statement. *Id*. at 4. Plaintiff further alleges Defendant unconstitutionally failed to provide a written statement of the evidence relied upon and the reasons for the sanctions imposed. *Id*. Plaintiff claims that he suffered emotional distress because he was unable to communicate with his family on the telephone for one year, was transferred to a higher security institution farther from family, and was not able to see his family for over three years after Defendant issued the sanctions. *Id*. at 4–5. Plaintiff states that he filed administrative remedies and a case in District Court which resulted in the incident report being expunged on August 21, 2013. *Id*. Plaintiff seeks the following relief: (1) "[a] declaration that the acts or omissions described herein violated his rights under the constitution and laws of the United States; (2) [n]ominal damages in the amount of $10,000 against the Defendant; (3) [c]ompensatory damages in the amount of $15,000 against the Defendant; (4) punitive damages in the amount of $15,000 against the Defendant; (5) [a] jury trial on all issues triable by jury; (6) Plaintiff's costs in this suit; and (7) [a]ny additional relief this court deems just, proper, and equitable." *Id*. at 5–6.

        2.      Underlying History of the DHO order

      Plaintiff was housed at Williamsburg FCI from June 19, 2007, until January 11, 2008. [ECF No. 24-2 at 4]. On December 11, 2007, Senior Officer Specialist K. Floyd

("Officer Floyd") ordered Plaintiff to end his phone call because he had exhausted his 15-minute call period. Def. Decl. at ¶ 8.[3] Plaintiff ignored Officer Floyd's order and continued to speak over the telephone. *Id.* Officer Floyd hung up the telephone at its base. *Id.* Someone called Officer Floyd a "bitch ass," and Officer Floyd was struck in the leg with a telephone.[4] *Id.*

Officer Floyd completed incident report 1676701, citing Plaintiff with a violation of disciplinary code sections 224: Assaulting Any Person; 307: Refusing to Obey an Order of Any Staff Member; and 312: Insolence Toward Any Staff Member. Def. Decl. at ¶ 8; *see also* ECF No. 1 at 3. Lieutenant J. Weirich ("Lt. Weirich") delivered a copy of the incident report to Plaintiff, advising him of his rights and giving him an opportunity to make a statement and to identify potential witnesses. Def. Decl. at ¶ 9; *see also* Pl. Decl. at ¶ 2.[5] Lt. Weirich interviewed inmates Kenneth Wright ("Mr. Wright"), Darrell Hudec ("Mr. Hudec"), and P. Agguirre-Lopez ("Mr. Agguirre-Lopez"). Def. Decl. at ¶ 10; [ECF No. 24-6 at 2]. Mr. Wright denied having seen Plaintiff throw anything outside the foot slot. *Id.* Mr. Hudec stated he had witnessed Plaintiff attempting to hit another officer with a tray earlier in the day and had subsequently seen Plaintiff throw the phone

---

[3] Defendant's declaration may be found at ECF No. 24-3.

[4] Officer Floyd reported Plaintiff used the profane term and threw the phone through the food slot in the cell door, striking him in the right leg. [ECF No. 24-6 at 1]. Lt. Weirich's report indicates Plaintiff admitted to having used the profane term, but denied having thrown the phone and suggested Officer Floyd was injured by the phone as it swung from the hook. *Id.* Plaintiff subsequently submitted a statement signed "Kenny Wright" and dated December 20, 2007. [ECF Nos. 1-2 at 6, 24-5 at 22–23]. The statement suggests Mr. Wright had used the profane term and had thrown the phone through the food slot. *Id.*

[5] Plaintiff's declaration may be found at ECF No. 1-2.

toward Officer Floyd. *Id.* Mr. Agguirre-Lopez denied having seen anything. *Id.* After taking statements from Plaintiff, Officer Floyd, Senior Officer Specialist G. L. Rose ("Officer Rose"), Mr. Wright, Mr. Hudek, and Mr. Agguirre-Lopez; viewing the video footage, and reviewing the telephone monitoring log, Lt. Weirich determined the charges were valid and informed Plaintiff that he was referring the matter to the Unit Discipline Committee ("UDC"). [ECF No. 24-6].

On December 14, 2007, the UDC conducted a hearing and determined the matter should be referred to the DHO for further consideration. Def. Decl. at ¶ 12; ECF No. 24-6 at 1. That same day, Plaintiff signed a document acknowledging he received notice that the matter had been referred for a hearing before the DHO, as well as a publication titled "Inmate Rights at Discipline Hearing." [ECF Nos. 24-7, 24-8]. Plaintiff requested that staff counselor C. Ethridge ("Ms. Ethridge") appear at the hearing to represent him, but indicated he did not wish to have witnesses. [ECF No. 24-7].

Defendant conducted the disciplinary hearing on December 20, 2007. Pl. Decl. at ¶ 3; Def. Decl. at ¶ 13. Plaintiff was present with Ms. Ethridge. Def. Decl. at ¶ 13. After the hearing, Defendant found that Plaintiff had committed the prohibited act as charged based on the incident report; Dr. Weirich's investigation; statements from Plaintiff, Officer Rose, and Correctional Officer Y. Seabrook; and a copy of the telephone log. Def. Decl. at ¶ 14. She imposed the following sanctions: a 40-day loss of good conduct time; disciplinary transfer; 30 days of disciplinary segregation; and loss of telephone privileges for 365 days. Pl. Decl. at ¶ 4; Def. Decl. at ¶ 14.

3.    Appeal of Disciplinary Sanctions

Plaintiff was transferred to Atlanta United States Penitentiary ("Atlanta USP") on January 11, 2008. [ECF No. 24-2 at 4]. Plaintiff challenged the results of the disciplinary hearing through the administrative remedy process. Pl. Decl. at ¶ 6. On January 17, 2008, Plaintiff filed formal administrative remedy ("Remedy") number 480872-R1 with the Southeast Regional Office ("the SERO"), to appeal the DHO hearing on December 20, 2007. Meredith Decl. at ¶ 7.[6] On January 30, 2008, the SERO rejected Remedy number 480872-R1 because Plaintiff did not file it on the correct form or follow proper procedure for including additional pages. *Id*. The SERO gave Plaintiff 10 days to bring the remedy into proper form. *Id.* Plaintiff was transferred from Atlanta USP to Oklahoma City Federal Correctional Institution ("Oklahoma City FCI") on February 19, 2008. [ECF No. 24-2 at 4]. While housed at Oklahoma City FCI, he submitted Remedy number 480872-R2 with the SERO, to appeal the results of the DHO hearing. Meredith Decl. at ¶ 7. Plaintiff was transferred to United States Penitentiary Hazelton ("USP Hazelton") on February 26, 2008, where he remained until September 16, 2008. [ECF No. 24-2 at 3–4]. The SERO rejected Remedy number 480872-R2 on February 29, 2008, because USP Hazelton fell under the jurisdiction of the Mid-Atlantic Regional Office ("the MXRO"), and Plaintiff needed to appeal to the MXRO. Meredith Decl. at ¶ 7. Plaintiff filed Remedy number 480872-R3 with the MXRO on March 17, 2008. *Id.* The remedy was

---

[6] The declaration of Leigh K. Meredith ("Ms. Meredith"), an attorney-advisor for the United States Department of Justice, Federal Bureau of Prisons ("BOP"), may be found at ECF No. 24-4 at 1–7. Ms. Meredith consulted prison records and databases to provide relevant dates that pertained to Plaintiff's Remedies and the responses he received.

denied on June 12, 2008. *Id.* Plaintiff took no further action on Remedy number 480872 until 2012.[7] Meredith Decl. at ¶ 8.

        4.      Appeal of DHO Report

Defendant signed the DHO report on January 2, 2008, and stated it was her customary practice to deliver the reports to inmates on the day they were typed. Def. Decl. at ¶¶ 14, 15. However, Defendant can offer no proof that she delivered the DHO report to Plaintiff on January 2, 2008.[8] *Id.* On or about November 2, 2012, Plaintiff filed Remedy number 716887-R1 with the MXRO, requesting a copy of the MXRO's response to Remedy number 480872-R3 dated June 12, 2008, and asserting that Remedy number

---

Meredith Decl. at ¶¶ 1, 2, 6.

[7] On July 19, 2012, Plaintiff filed Remedy number 480872-R4 with the SERO. Meredith Decl. at ¶ 8. The SERO rejected it the day it was filed and noted that Plaintiff should "[s]ee response to appeal Remedy #480872-R3 provided to you by MXR on 6-12-08." *Id.* Plaintiff filed Remedy number 480872-R5 on August 31, 2012, Remedy number 480872-R6 on September 17, 2012, and Remedy number 480872-R7 on September 27, 2012, and the SERO rejected all three and noted "[s]ee response #480872-R3 given by MXR on 6-12-08." *Id.* On or about October 29, 2012, Plaintiff filed Remedy number 480872-A1 with the BOP Central Office. Meredith Decl. at ¶ 9. The BOP Central Office rejected Remedy number 480872-A1 on December 11, 2012, and noted that the appeal was not received within 30 days of the Regional Director's response. Meredith Decl. at ¶ 9. It stated "Concur with Region's rationale for rejection. The Region responded 6/12/08. You had 30 days from that date to appeal to Central Office." *Id.* Plaintiff subsequently filed Remedy number 480872-R8 with the SERO on or about January 2, 2013, and Remedy number 480872-R9 on January 30, 2013. *Id.* Both of these Remedies were rejected because they were submitted to the wrong level and filed untimely. *Id.* Plaintiff filed Remedy number 480872-A2 with the BOP Central Office on February 19, 2013, which was rejected on February 25, 2013, as untimely. *Id.* at ¶ 10. Plaintiff filed Remedy number 480872-A3 with the BOP Central Office on February 25, 2013, which was rejected as untimely on March 4, 2013. *Id.*

[8] Defendant states the DHO packet, which contained the DHO Report, the "Inmate Rights at Discipline Hearing Before the DHO" form, and the Incident Report, was not placed in Plaintiff's central file because of an administrative error, but was located in her former office at Bennettsville Federal Correctional Institution ("Bennettsville FCI"). Def. Decl.

480872 was a request for a copy of the DHO report.[9] Meredith Decl. at ¶ 11; ECF No. 24-4 at 26.

Plaintiff alleges he first received a copy of the DHO report on January 18, 2013.[10] [ECF No. 45 at 3]; *see also* ECF No. 24-5 at 24–26. The record contains two copies of the DHO Report, which show multiple inconsistencies. *Compare* ECF No. 24-5 at 24–26, *with* ECF No. 24-10. The first is the copy of the DHO Report Plaintiff attached to the complaint he filed in the United States District Court for the Middle District of Pennsylvania ("Plaintiff's copy"). [ECF No. 24-5 at 24–26]. The second is the copy of the DHO Report located in Defendant's former office at Bennettsville FCI ("Defendant's copy"). [ECF No. 24-10]; *see also* Def. Decl. at ¶ 15.

The first page contains the following inconsistencies: Plaintiff's copy indicates the date of the incident report to be "12/14/07," but Defendant's copy reflects a date of "12/11/07"; Plaintiff's copy indicates Lt. Weirich provided him advanced written notice of the charge on "12/14/07," but Defendant's copy provides Plaintiff received advanced

---

at ¶ 15.

[9] On February 22, 2013, the MXRO denied Remedy number 716887-R1 and indicated the case file for Remedy number 480872 had been destroyed pursuant to BOP Program Statement 1330.17 that mandated Remedy case files be destroyed three full years after the year in which the response was completed. Meredith Decl. at ¶ 11; ECF No. 24-4 at 27. Plaintiff filed Remedy number 716887-A1 with the BOP Central Office on March 14, 2013, and the Central Office denied the appeal on January 6, 2014, noting that a review of Plaintiff's Remedy history showed that he successfully filed Remedy number 480872-R3 on March 17, 2008, and that Remedy number 480872-R3 was denied and closed on June 12, 2008, by the MXRO. [ECF No. 24-4 at 28, 29].

[10] The record does not include any communication from the BOP that suggests a copy of the DHO report was sent to Plaintiff in response to his inquiries in or before January 2013. Furthermore, the undersigned notes Plaintiff indicated in Remedy number 716887-A1 that he received a copy of the DHO Report in 2012. [ECF No. 24-4 at 28].

written notice on "12/11/07"; Defendant's copy indicates the hearing was held at 9:20 a.m., but Plaintiff's copy omits the "a.m."; Defendant's copy indicates the staff representative statement included the phrase "[h]e realizes what he did," but Plaintiff's copy omits this phrase; Defendant's copy notes Plaintiff's statement indicated "I took the phone and threw it but at the trap. When I threw it, I didn't throw it at him. He told me but one time, not two or three. I did call him a bitch ass," but Plaintiff's copy omits this portion; Plaintiff's copy contains an "X" by "Yes" to indicate Plaintiff requested witnesses, but Defendant's copy contains an "X" by "No."; Defendant's copy indicates "N/A" after "the following persons requested were not called for the reason(s) given," but Plaintiff's copy includes no "N/A"; Defendant's copy includes an "X" by "N/A" for "Unavailable witnesses were requested to submit written statements, but Plaintiff's copy lacks an "X" by "N/A"; and Defendant's copy provides the DHO also considered "[s]upporting memorandums from G. L. Rose and Y. Seabrook, Correctional Officers," but Plaintiff's copy indicates "N/A." *Compare* ECF No. 24-5 at 24, *with* ECF No. 24-10 at 1.

The inconsistencies in the two reports continue in the DHO's summary of the evidence relied upon to support her findings. *Compare* ECF No. 24-5 at 25, *with* ECF No. 24-10 at 2. Plaintiff's copy indicates "You stated you understood your rights," but Defendant's copy states "You stated you understood your rights, had no documentary evidence to present and did not request any witness or staff representative to appear on your behalf." *Id.* Plaintiff's copy provides "[t]he DHO finds you committed the prohibited acts . . . when you refused to hang up the telephone, became insolent with the

police officer and threw the telephone," but Defendant's copy includes "threw the telephone, hitting him." *Id.* Defendant's copy provides "[t]he telephone hit the reporting officer on his right leg," but Plaintiff's copy omits this sentence. *Id.* Plaintiff's copy provides "[a]lthough you stated you was not the one that throw the telephone at the officer," but Defendant's copy indicates "[a]lthough you stated you did not intentionally throw the telephone at the officer." *Id.* Plaintiff's copy states "The DHO relies on the greater weight of evidence," but Defendant's copy includes the following after the comma: "your admission you threw the telephone out of the food slot, did not hang up the telephone immediately when being told to do so, called the officer a 'bitch ass,' and his statement that he was assaulted by the telephone you had thrown out the food slot." *Id.*

Under the section for "SANCTION OR ACTION TAKEN," Defendant's copy indicates Plaintiff was disallowed an additional 13 days of good conduct time that was not reflected in Plaintiff's copy. *Id.* Plaintiff's copy states the DHO imposed 27 days disallowance of good conduct time, but Defendant's copy indicates Plaintiff was disallowed 40 days of good conduct time. *Id.* Finally, Plaintiff's copy includes a date of January 8, 2008, beside Defendant's signature, but Defendant's copy reflects a date of January 2, 2008. *Compare* ECF No. 24-5 at 26, *with* ECF No. 24-10 at 3.

On February 19, 2013, Plaintiff was transported to United States Penitentiary Lewisburg ("USP Lewisburg"). [ECF No. 24-2 at 2]. Plaintiff filed Remedy number 725799-R1 with the Northeast Regional Office ("the NERO") on March 7, 2013, and attached a statement from D. Davis ("Mr. Davis"), a counselor at Atlanta USP, dated

January 18, 2013, that provides as follows: "The reason for untimely filing was not inmate Chestnut['s] fault. The DHO report and the above remedy was misplaced by staff and provided to inmate on 1-18-2013." [ECF No. 24-5 at 10, 21–23]. The NERO rejected Remedy number 725799-R1 as untimely on March 12, 2013, because the appeal was not received within 20 days of Plaintiff's receipt of the DHO report on January 18, 2013. *Id.* at ¶ 14; [ECF No. 24-4 at 17]. Plaintiff filed Remedy number 725799-R2 with the NERO on March 27, 2013, an attached a statement from M. Nicholas ("Mr. Nicholas"), case manager at USP Lewisburg, who stated as follows:

> This memorandum is to serve as verification inmate Chestnut, R. #13465-171 is attempting to submit an Administrative Remedy for the attached DHO report (1676701). A memorandum from D. Davis, Correctional Counselor at USP Atlanta indicates the report and remedy were misplaced by staff. Counselor Davis indicates inmate Chestnut was provided his copies on January 18, 2013. Inmate Chestnut was transferred from FCI Bennettsville, SC on February 19, 2013. Inmate Chestnut was in transit until February 19, 2013. Upon arrival to USP Lewisburg, inmate Chestnut was issued his property on March 13, 2013. Please accept this memorandum as verification inmate Chestnut was unable to file in a timely manner due to the circumstances described above.

[ECF No. 24-5 at 11]; Meredith Decl. at ¶ 14. The NERO again rejected Remedy number 725799-R2 as untimely on April 2, 2013, and noted the staff verification did not support Plaintiff's late filing. [ECF No. 24-5 at 18]. On April 7, 2013, Plaintiff filed Remedy number 725799-R3 with the NERO. [ECF No. 24-5 at 20]. The NERO rejected it as untimely on April 11, 2013. *Id.* at 19. Plaintiff filed Remedy number 725799-A1 with the BOP Central Office on April 23, 2013. [ECF No. 24-5 at 16]. The BOP Central Office rejected the Remedy on April 29, 2013, and informed Plaintiff that an extension for filing could only be granted with a staff verification that provided the reason for untimely

filing. [ECF No. 24-4 at 24]. Plaintiff filed Remedy number 725799-A2 with the BOP Central Office on May 16, 2013, which rejected it the same day. Meredith Decl. at ¶ 15.

On June 6, 2013, Plaintiff filed a Petition for Writ of Habeas Corpus in the Middle District of Pennsylvania claiming that he did not receive due process at the DHO hearing on Incident Report 1676701. [ECF No. 24-5 at 4–5]. Plaintiff alleged that he did not receive "the incident report within 24 hours, as required by bureau policy." *Id.* at 5. He also asserted that his request for the video footage to be preserved was denied and the DHO failed to call his requested witnesses at the hearing or to consider the witness statements. *Id.* Plaintiff requested that the court restore his good conduct time and the incident report be expunged. *Id.* On September 9, 2013, Warden Thomas, as Respondent, filed a response to Plaintiff's habeas petition, indicating that Brian Chambers, DHO at USP Lewisburg, expunged incident report 1676701 and restored 40 days of good conduct time to Plaintiff's sentence because he could not locate the DHO report, "Inmate Rights at Discipline Hearing Before the DHO" form, or incident report 1676701 in Plaintiff's central file. *See* Chambers Decl. at ¶¶ 5, 6[11]; Knepper Decl. at ¶¶ 5, 6.[12] The United States District Court for the Middle District of Pennsylvania dismissed as moot Plaintiff's Petition for Writ of Habeas Corpus. [ECF No 24-14].

---

[11] Brian Chambers' declaration may be found at ECF No. 24-11 at ECF No. 24-13.
[12] The declaration of Jennifer Knepper, an attorney advisor with the BOP who reviewed Plaintiff's disciplinary history, may be found at ECF No. 24-11 at 7–8 and 24-12.

II.     Discussion

A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the

14

requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.     Analysis

Plaintiff is bringing suit against a former DHO at a federal prison. As such, his constitutional claims are evaluated under *Bivens*. *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983 and case law involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814–820, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994).

Defendant has moved for summary judgment based in part on the defense of Plaintiff's failure to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted).

The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement that must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741.

No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant." *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005).

The BOP's administrative grievance process generally begins with an informal complaint at the institutional level that may result in a formal written complaint to the warden. *See* 28 C.F.R. §§ 542.13, 542.14. However, for grievances involving DHOs, the regulations require an inmate to bypass the general grievance procedures and submit his Remedy directly to the Regional Director for the region where he is located within 20 days. 28. C.F.R. §§ 542.14(d)(2), 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he may appeal to the General Counsel at the BOP's Central Office within 30 days. 28 C.F.R. §542.15(a). Appeal to the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a).

Both the Regional Director and the General Counsel may grant an extension in filing time where the inmate demonstrates a valid reason for delay. 20 C.F.R. §§ 542.14(b). The following are considered "[v]alid reasons for delay":

> an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

28 C.F.R. §§ 542.14(b), 542.15(a).

Plaintiff alleges Defendant imposed sanctions without having afforded him due process in that she failed to provide him advance notice of the hearing; declined to allow him to call witnesses and present documentary evidence; and hid the video evidence from the record. [ECF No. 1 at 3–4]. As a participant in the hearing on December 20, 2007, Plaintiff was aware of these alleged violations of his due process rights at that time and did not require a copy of the DHO report to allege them. In fact, Plaintiff challenged the DHO hearing through the administrative remedies process in early 2008. *See* ECF No. 1 at 2. Plaintiff successfully filed Remedy number 480872-R3 with the MXRO on March 17, 2008, after being granted several extensions because of transfers and improper form. Meredith Decl. at ¶ 7. The remedy was denied on June 12, 2008. *Id.* Plaintiff had 30 days to file an appeal with the General Counsel, pursuant to the provisions of 28 C.F.R. § 542.15(a), but failed to do so and took no further action on Remedy number 480872 until 2012. *Id.* at ¶¶ 7, 8. Although Plaintiff filed multiple actions with different offices that pertained to Remedy number 480872, he did not present any evidence that demonstrated

17

a valid reason for the more than four-year delay between the MXRO's decision in June 2008 and his 2012 filing. *See id.* at ¶¶ 8, 9. He also fails to allege in the pleadings that he was prevented from filing an appeal within 30 days of the June 12, 2008 decision from the MXRO. *See* ECF Nos. 1, 45. Thus, Plaintiff failed to exhaust his administrative remedies with respect to Remedy number 480872.

To the extent Plaintiff argues Defendant's alleged failure to deliver the DHO Report was a due process violation and that the contents of the DHO Report reveal further violations of his due process rights, the undersigned recommends the court find he failed to exhaust his administrative remedies in challenging the DHO report. Plaintiff alleges he first received a copy of the DHO report on January 18, 2013. [ECF No. 45 at 3]. Therefore, the 20-day deadline for filing an administrative remedy with the Regional Office expired on February 7, 2013. *See* 28 U.S.C. §§ 542.14(d)(2), 542.15(a). Plaintiff filed Remedy number 725799-R1 with the NERO on March 7, 2013, 48 days after he admits having received the DHO report. *See* ECF Nos. 24-5 at 21 and 45 at 3. He submitted, along with Remedy number 725799-R1, a statement from D. Davis at Atlanta USP that indicated the DHO report had been misplaced and was not delivered to him until January 18, 2013, but he submitted no evidence that suggested he was prevented from filing a Remedy between January 18, 2013, and February 7, 2013. *See* ECF No. 24-5 at 10, 21. Thus, the NERO properly rejected Remedy number 725799-R1 as untimely filed, but instructed Plaintiff that he could provide further staff verification to support his late filing. [ECF No. 24-5 at 17]. Plaintiff responded by providing a second statement from Mr. Nicholas that indicated he was in-transit on February 19, 2013, when he was

transported to USP Lewisburg, and did not have his personal items returned to him until March 13, 2013. [ECF No. 24-5 at 11]; Meredith Decl. at ¶ 14. However, Mr. Nicholas' statement only concerned the period between February 19, 2013, and March 13, 2013, which were outside the 20-day period for filing the Remedy with the Regional Office. Thus, Plaintiff provided no evidence to the NERO to suggest he had a valid reason for delay, as defined in 28 C.F.R. § 542.14(b), during the relevant period between January 18, 2013, and February 7, 2013. In light of Plaintiff's failure to submit evidence that demonstrated he was unable to comply with the February 7, 2013 deadline, the NERO did not err in rejecting Remedy number 725799 as untimely and in declining to allow him to file his administrative remedy out of time, and the Central Office did not err in concurring with the NERO's findings and rejecting Plaintiff's Remedies.

Plaintiff's failure to timely submit his grievances for agency review resulted in his failure to exhaust his administrative remedies. Although the Fourth Circuit has recognized that an administrative remedy is not available to a prisoner who is unable to avail himself of the grievance process, "through no fault of his own," the record does not support such a finding here. Plaintiff represents to this court that his counselors at Williamsburg FCI and USP Hazelton did not make the administrative remedy process available to him, but the undersigned notes that Plaintiff was incarcerated at neither of these institutions during the relevant period. [ECF No. 45 at 3]. Plaintiff was incarcerated at Atlanta USP from September 27, 2012, until February 19, 2013. [ECF Nos. 24-2 at 1–2 and 24-5 at 20]. He argued to the NERO that this was an extended period in-transit between his incarcerations at Bennettsville FCI and USP Lewisburg, but presented no

persuasive evidence to indicate he lacked access to the administrative remedies process during this period. [ECF No. 24-5 at 20]. To the extent he generally argues the administrative remedies process was not available to him from January 18, 2013, until February 7, 2013, this assertion is undermined by his filing of Remedy number 480872-R9 on January 30, 2013. *See* Meredith Decl. at ¶ 9. He stated he was without his property from February 19, 2013, until March 13, 2013, but this period was outside the 20-day period for filing the administrative remedy and his argument is undermined by the fact that he filed Remedy number 725799-R1 on March 7, 2013, and attached his statement dated December 20, 2007, as well as Mr. Wright's statement. *See* ECF No. 24-5 at 20–23. Therefore, Plaintiff failed to exhaust his administrative remedies and the court lacks subject matter jurisdiction to consider the merits of his case.

III.    Conclusion

For the foregoing reasons, the undersigned recommends the court grant Defendant's motion for summary judgment and dismiss this action with prejudice.

IT IS SO RECOMMENDED.

July 13, 2016                                          Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).